**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 13-cr-00392-CMA

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**1.  GEORGE THOMAS BROKAW,
2.  JOHN J. PAWELSKI, and
3.  MIMI M. VIGIL,**

**Defendants.**

_____

**REPORTER'S TRANSCRIPT
(Final Trial Preparation Conference)**

_____

Proceedings before the HONORABLE CHRISTINE M.
ARGUELLO, Judge, United States District Court, for the
District of Colorado, commencing at 2:57 p.m. on the 9th
day of October, 2014, Alfred A. Arraj United States
Courthouse, Denver, Colorado.

**A P P E A R A N C E S**

**FOR THE PLAINTIFF:**
MATTHEW T. KIRSCH and MARTHA A. PALUCH, U.S. Attorney's
Office - Denver, 1225 17th St., Suite 700, Denver, CO
80202

**FOR DEFENDANT BROKAW:**
Pro Se.
**FOR DEFENDANT PAWELSKI:**
Pro Se.
**ADVISORY COUNSEL DEFENDANT PAWELSKI:**
RICHARD N. STUCKEY, Attorney at Law, P.C., 1801 Broadway,
#1100, Denver, CO 80202
**FOR DEFENDANT VIGIL:**
Pro Se.

1                      **OCTOBER 9, 2014**

2           (Proceedings commence at 2:57 p.m.)

3           THE COURT:  You may be seated.

4           Court calls Criminal Case No. 13-cr-00392-CMA

5    encaptioned United States of America v. George Thomas

6    Brokaw, John J. Pawelski, and Mimi M. Vigil.

7           Counsel, would you please enter your appearances.

8           MR. KIRSCH:  Good afternoon, Your Honor, Matthew

9    Kirsch and Martha Paluch for the United States.  We also

10   have TIGTA Special Agent Klaton Knabb and IRS Special

11   Agent Adam Rutkowski with us at the table.

12          THE COURT:  Good afternoon.

13          Would the defendants please enter their

14   appearances.

15          DEFENDANT BROKAW:  Your Honor, I am here by special

16   attendance today.  I come to this court with honor.  And

17   as I stated before, my name is private, and I will not

18   state it on this public record.

19          THE COURT:  All right.  The Court will note for the

20   record that George --

21          DEFENDANT BROKAW:  I am a living man and creation

22   of God.

23          THE COURT:  Excuse me.  I just asked for an entry

24   of appearance.  I didn't ask for a speech.

25          The Court will note that George Thomas Brokaw is

1    present as we proceed in this hearing today.  You may be

2    seated.

3            DEFENDANT BROKAW:  Judge, I don't --

4            THE COURT:  You may be seated.

5            DEFENDANT BROKAW:  Judge, I don't --

6            THE COURT:  Mr. Brokaw, you may be seated.

7            DEFENDANT BROKAW:  I don't accept your contract to

8    offer for my name.  You can state the name, Judge.

9            THE COURT:  I did.

10           DEFENDANT BROKAW:  You can state the name of this

11   dead entity, the birth certificate, but you can't state my

12   name because it is a separate entity.

13           THE COURT:  It is not your name -- I just noted

14   that George Thomas Brokaw, who is the defendant identified

15   here, is present in court.

16           DEFENDANT BROKAW:  I do not accept your contract.

17           THE COURT:  All right.  You may be seated.

18           DEFENDANT BROKAW:  I do not accept your contract.

19           THE COURT:  Ms. Vigil, do you wish to enter you

20   appearance?

21           DEFENDANT BROKAW:  I would like to state one more

22   thing, Your Honor --

23           THE COURT:  All right, briefly.

24           DEFENDANT BROKAW:  -- for the record.  Of this

25   entity, I am the general executor.  And you may state the

1    name of this dead entity on the record because you are the

2    trustee.  I am the general executor.

3              THE COURT:  All right.  And the record will show

4    that the document to which Mr. Brokaw refers is his birth

5    certificate, I believe.

6              DEFENDANT BROKAW:  With the all capital letters

7    name, spelled in all upper letter case.  GEORGE, with all

8    capital letters, THOMAS, all capital letters, BROKAW, all

9    capital letters.  And I don't understand what these

10   procedures are about.  I don't understand.

11             I don't understand, Your Honor, why I am here.  I

12   came in honor today.  I don't understand why I am here.

13   The living man, the living breathing man, a creation of

14   God.

15             THE COURT:  All right.  Well, you are here today

16   because we have a final trial preparation conference for

17   the trial that is going to take place for the charges

18   submitted against you.

19             Now, I will tell you, Mr. Brokaw, if you do not sit

20   down and quit disrupting, I will call the Marshal down

21   here we will take care of that.

22             DEFENDANT BROKAW:  Judge, are you --

23             THE COURT:  This is the final trial preparation

24   conference.  I am not going to put up with this.

25             DEFENDANT BROKAW:  Are you contracting --

1           THE COURT:  Ms. Hartmann, would you please call the

2    Marshal.

3           DEFENDANT BROKAW:  Your Honor, it is not necessary

4    to call the Marshal.

5           THE COURT:  Well, quit interrupting, then, and sit

6    down.

7           DEFENDANT BROKAW:  I will leave right now.

8           THE COURT:  No, you won't leave.  I will have the

9    Marshal retain you.

10          DEFENDANT BROKAW:  Your Honor, are you contracting

11   with me under God's law?

12          THE COURT:  I am not contracting with you at all.

13   I am conducting a final trial prep conference.  You are

14   either going to be seated or I will have you arrested.

15          DEFENDANT BROKAW:  I am living man.  I am a

16   creation of God.  And I am just telling you -- I am asking

17   you, are you contracting with me?

18          THE COURT:  I am not contracting with you.  We are

19   in final trial prep conference.  And I will tell you once

20   again, when I allowed you to proceed pro se, I told you

21   you had to abide by this Court's rules, and if you refused

22   to do so and you continue to be disruptive, I will have

23   you arrested.

24          DEFENDANT BROKAW:  I do not understand.  You will

25   have me arrested?

```
 1              THE COURT:  I will.
 2              DEFENDANT BROKAW:  I do not understand what this is
 3    all about.  And I do not understand why I am here.  I am a
 4    living, breathing man, a creation of God.  I am not this
 5    dead entity that you've recognized on the record.
 6              THE COURT:  You may be seated.
 7              Ms. Vigil, do you want to enter an appearance, or
 8    should I enter it for you?
 9              DEFENDANT VIGIL:  I am the living, breathing woman
10    on the land.  I am here as the executrix of the estate.  I
11    am -- you are the fiduciary.  You are the trustee.  And it
12    is your responsibility to settle and close this case as
13    that.
14              THE COURT:  All right.  The Court will note for the
15    record that Ms. Mimi M. Vigil, defendant in this case, is
16    also present.
17              Mr. Pawelski, do you wish to enter an appearance,
18    or should I enter it for you?
19              DEFENDANT PAWELSKI:  I am John Joseph Pawelski, a
20    natural man.  I am here in honor and in peace.  I wish you
21    to be the executor or the trustee.  I will be executor.
22    And we wish to discharge the debt on this case.
23              THE COURT:  You may be seated.
24              All right.  The parties have entered their
25    appearances.  Trial in this matter is scheduled for three
```

1    weeks to begin November 3, 2014, at 8:30 a.m.

2        DEFENDANT BROKAW:  I don't understand.

3        THE COURT:  I have reviewed all motions except for

4    Document No. 282, which is a request for the return of the

5    passport by Mr. Brokaw.  That is still pending, that

6    motion is denied.

7        Document No. 278, which is a motion to strike, and

8    Document No. 278 is an objection to exhibits, both of

9    those I have reserved ruling upon --

10       DEFENDANT BROKAW:  Your Honor --

11       THE COURT:  There are no other outstanding motions.

12       DEFENDANT BROKAW:  Your Honor, I don't understand.

13   I don't understand why you are proceeding.  Are you

14   offering to contract under God's law or under common law?

15   I don't understand.

16       THE COURT:  Mr. Brokaw, we are in a final trial

17   prep conference.  I told you what you needed to do to

18   prepare for this when I allowed you to proceed pro se.  We

19   are proceeding with the trial in this matter regardless of

20   what you may consider yourself to be.  And if you continue

21   to interrupt, I will have you removed from the Court and

22   you can listen to me outside.

23       DEFENDANT BROKAW:  Your Honor, I am a living man,

24   and I don't understand what these proceeding are about.

25       THE COURT:  You do understand what it is about.

1    This is the final trial prep conference.  This is the

2    conference that we have before trial, which is to start in

3    three weeks.  And this is where I will tell you how the

4    trial is going to proceed and what we are going to proceed

5    with.

6         DEFENDANT BROKAW:  Your Honor, I still don't

7    understand.  I don't understand why I am here.

8         THE COURT:  Because you are a defendant in this

9    case whether you wish to recognize it or not.

10         DEFENDANT BROKAW:  I am a living man, and the

11   defendant in this case has been identified as the all

12   capital letters --

13         THE COURT:  Ms. Hartmann, have you called the

14   Marshal?

15         COURTROOM DEPUTY:  Yes, Your Honor.

16         THE COURT:  All right.

17         DEFENDANT BROKAW:  The all capital letters birth

18   certificate, Your Honor.

19         THE COURT:  I have heard what you have on the

20   record.  It is on the record.  You may be seated, and you

21   may quit interrupting me.

22         DEFENDANT BROKAW:  Did you call the Marshal?

23         THE COURT:  Yes, the Marshal is on his way down.

24         All right.  The Government in this case has listed

25   401 exhibits, but I understand that you have a new exhibit

1   list; is that correct?

2       MR. KIRSCH:  We did provide a slightly revised

3   exhibit list today, Your Honor.  It has added about -- it

4   has removed a few exhibits and it has added a total, I

5   think, of about 15 new exhibits.  And just, Your Honor, to

6   be clear, our numbers do go up to 400, but we have a

7   significant number of gaps within those numbers.  We tried

8   to do that to help make the organization work a little bit

9   better.  So we expect to offer significantly less than 400

10  exhibits during the course of the trial.

11      THE COURT:  All right.  For the record, I will note

12  that the U.S. Marshal, Deputy Marshals have entered.  And

13  I will warn you once again, Mr. Brokaw, if you continue to

14  disrupt this Court with your unnecessary diatribe, that I

15  will have the Marshals remove you and put you in the cell

16  that is located -- you can listen to it, but you will not

17  be able to interrupt.

18      DEFENDANT BROKAW:  Your Honor, I don't --

19      THE COURT:  You may be seated at this time.

20      DEFENDANT BROKAW:  I don't understand, Your Honor.

21      THE COURT:  Mr. Brokaw, you may be seated at this

22  time or you may be removed from the courtroom.

23      DEFENDANT BROKAW:  I don't understand.  I don't

24  understand why I am here, Your Honor.  I have told you

25  that I am the living man --

1          THE COURT:  Would the Deputy Marshals please remove

2     Mr. Brokaw from the courtroom.

3          DEFENDANT BROKAW:  I told you I would leave

4     willingly.

5          THE COURT:  No, you are not going to leave, you are

6     part of this case.  You will be put in the cell in there.

7     You will listen.  And then at the end of this, you may be

8     brought back in.  And if you want to remain in contempt of

9     court, I can put you in jail.  But I am not going to have

10    you disrupting this Court this way.

11         DEFENDANT BROKAW:  I don't understand, Your Honor.

12         THE COURT:  All right.  I have received no exhibit

13    list from Ms. Vigil or Mr. Brokaw.

14         (Defendant Brokaw is removed from the courtroom.)

15         Mr. Pawelski, you did submit an exhibit list, but

16    it only contains names that contain no documents.  So I

17    don't know if you filed the wrong document, or if that --

18    you filed as an exhibit list something that was a witness

19    list as opposed to an exhibit list.

20         DEFENDANT PAWELSKI:  Ma'am, the exhibit list, I

21    think, had the documents on it that I was going to bring

22    in.

23         THE COURT:  Let me get to my document list really

24    quickly here.  The exhibit list that I have from you just

25    contains names, starting with William Frankel.

1           DEFENDANT PAWELSKI:  Next to it should be the

2     description of the document.

3           THE COURT:  Let me go all of the way over.  I see,

4     oath of office.  Is that the document?

5           DEFENDANT PAWELSKI:  Yes, ma'am.

6           THE COURT:  Okay.  All right.  And what is the oath

7     of office.  What is the relevance?  I see.  I saw just the

8     names, I didn't see the exhibits.  So SF61, what is that?

9           DEFENDANT PAWELSKI:  Ma'am, you should know what

10    the SF61 is, you have one.

11          THE COURT:  Tell me what it is.

12          DEFENDANT PAWELSKI:  That is the appointment of his

13    position.

14          THE COURT:  And how is that relevant to the issues

15    in this case?

16          DEFENDANT PAWELSKI:  There are certain parameters

17    that these people, as government agents, need to handle,

18    and I believe they went over and above that.

19          THE COURT:  Okay.  And how is that relevant to the

20    charges against you?

21          DEFENDANT PAWELSKI:  The charges against me are

22    bogus and fraud.

23          THE COURT:  They are tax fraud and tax evasion.

24          DEFENDANT PAWELSKI:  No, they are just fraud.

25          THE COURT:  Okay.  So you are saying that they are

1    fraudulent?

2          DEFENDANT PAWELSKI:  Yes, ma'am.

3          THE COURT:  That is a legal matter for me to

4    decide, not for the jury to decide.

5          DEFENDANT PAWELSKI:  Very well.

6          THE COURT:  All right.  So now I understand your

7    exhibits.  They may or may not come in.  I will rule on

8    those.  I will reserving ruling on those until the date of

9    trial.

10          MR. KIRSCH:  Your Honor, can I make one other

11    comment about the exhibits?

12          THE COURT:  You may.

13          MR. KIRSCH:  We haven't received copies of any of

14    these documents from Mr. Pawelski.  That is not completely

15    accurate.  These haven't been described with enough

16    particularity for us to determine.  I believe that some of

17    the documents, particularly many of the ones that are

18    listed towards the end of Mr. Pawelski's exhibit list,

19    have been attached as exhibits to one or more of the

20    pleadings that he has filed.

21          But we don't have copies of the SF61s or the oaths

22    of office.  And it is not clear to me that we have copies

23    of any of the performance bonds that he is referring to in

24    this list, as well.  And so we would be asking for an

25    order that we be provided with copies of those before

1    Mr. Pawelski would attempt to introduce them as exhibits

2    at trial.

3         THE COURT:  All right.

4         DEFENDANT PAWELSKI:  Perhaps I did this

5    incorrectly, because those documents will be on the

6    subpoena for them to bring to court.

7         THE COURT:  Well, we have to get to that issue.  So

8    you don't have these documents at this point?

9         DEFENDANT PAWELSKI:  I don't have those, no.

10        THE COURT:  So let's go on to the witness list,

11   then.  I have the Government with 40, unless you have

12   amended that, as well.  Forty will-call witnesses and 13

13   may-call witnesses.

14        MR. KIRSCH:  Your Honor, again, we did provide a

15   slightly amended list.  I think that we may have added

16   more to the may-call than to the will-call.  And just so

17   the Court is aware, we are still working with some of

18   these financial institutions.  There are one or two that

19   at the moment still say "custodian of records."  And there

20   are one or two, that as we get closer to trial, I expect

21   that we're going to have a different name representing

22   that institution.

23        We'll obviously that have finalized by the time we

24   do jury selection so that the Court will be able to make

25   sure that there aren't any conflicts.  But I do think that

1    our current witness list is inaccurate; a pretty accurate

2    prediction about both the total number of witnesses we

3    will have and the time for their testimony.

4          THE COURT:  All right.  And do you have the

5    witnesses that are not Government witnesses, or even those

6    that are, do you have them under subpoena?

7          MR. KIRSCH:  We do, Your Honor.

8          THE COURT:  All right.  Mr. Pawelski, you did

9    submit a number of -- 53 witnesses.  I received nothing

10   from Ms. Vigil or Mr. Brokaw.

11         Excuse me, if you are going to talk in my courtroom

12   you can step out into the hallway, otherwise you remain

13   silent so you don't disrupt, okay.  All right.  If not, I

14   will have the Marshal escort you out, as well.

15         All right.  Mr. Pawelski, you had 53 witnesses.

16   Now, a significant number of those are witnesses that are

17   listed by the Government.  Three of them that you listed

18   are the United States of America, the Federal Government

19   and U.S. Government.  Those are not actual people that can

20   be subpoenaed into court.

21         But, with respect to the -- those that are not on

22   the Government's witness list, what I would -- what I'm

23   going to need to do before I will sign off on any

24   subpoenas is find out what their relevance is to the

25   issues in this case.  And then I will have to hear from

1    the Government as to whether they have any input with

2    respect to that.

3          So you have Judge Watanabe.  What is his relevance?

4          DEFENDANT PAWELSKI:  Well, the relevance is that he

5    allegedly signed a search warrant.  When I sent him an

6    affidavit for his verification, he defaulted on the

7    affidavits, and instead sent out two U.S. Marshals to

8    intimidate me.

9          THE COURT:  And how is that's relevant to the

10   defense in this case against the charges?

11         DEFENDANT PAWELSKI:  If the search warrant is

12   invalid, the case is invalid.

13         THE COURT:  That is a legal matter you needed to

14   bring to my attention so I could rule on it.  It is not a

15   matter that gets decided by the jury.

16         Mr. Kirsch, what is the Government's response to

17   that witness?

18         MR. KIRSCH:  Your Honor, we don't think that Judge

19   Watanabe is a proper witness, both -- because he doesn't

20   have anything relevant to say.  With respect to issues of

21   guilt or innocence, we agree with the Court that the

22   search warrant, in fact, Mr. Pawelski did challenge the

23   validity of the search warrant.  The Court ruled that the

24   search warrant was valid.

25         In addition, this is going to be true with respect

1    to all of the other government employees that are on

2    Mr. Pawelski's list.  He hasn't complied with the Tooley

3    regulation for subpoenaing government employees.  And the

4    Government is going to insist -- will be filing motions to

5    quash any subpoenas that he attempts to serve without

6    having first complied with those regulations.

7            THE COURT:  All right.  With respect to Judge

8    Watanabe, I find that any testimony that he would give is

9    totally irrelevant to the issues to be tried before this

10   jury.  You did raise that as an issue, and I have denied

11   your motion to dismiss based on the affidavit.  And,

12   therefore, I find that any subpoena of Judge Watanabe

13   would be not called for in this case.

14           Jacob Lew?

15           DEFENDANT PAWELSKI:  Jacob Lew is the Secretary of

16   the Treasury.  He is the gentleman that would have the

17   alleged bonds -- bond of promissory notes that were sent

18   to them, and I would like to see the originals, if they

19   have them.  I believe they have monetized them and made

20   them into some type of document that would be bringing

21   funds to them.

22           THE COURT:  Mr. Kirsch?

23           MR. KIRSCH:  Your Honor, Mr. Lew was not Secretary

24   of the Treasury during any of the relevant time periods of

25   this case, first of all.

1          Second, I believe that Mr. Pawelski is referring to

2   some of the -- to the bonded promissory notes that were

3   created and mailed by himself and the other defendants in

4   this case.  They have -- all of those have been provided

5   to the defendants in discovery.

6          The additional questions that Mr. Pawelski says he

7   wants to ask about Mr. Lew and whether or not those notes

8   have been monetized or somehow used by the United States,

9   are also completely irrelevant to the charges in this

10   case, and we think that subpoena request should be denied,

11   as well.

12          THE COURT:  The Court does find that any testimony

13   by Mr. Jacob Lew is irrelevant to the issues in this case,

14   including the defense and, therefore, the Court will not

15   issue a subpoena, and finds that a subpoena for Jacob Lew

16   would be inappropriate in this case.

17          Eric Holder or designee.  What is the relevance of

18   his testimony?

19          DEFENDANT PAWELSKI:  Again, Mr. Holder is

20   knowledgeable about the Title 18 alleged law; that it has

21   not been ratified by Congress.

22          THE COURT:  All right.

23          MR. KIRSCH:  Your Honor, I think Mr. Pawelski is

24   referring to the jurisdictional argument that he has

25   previously raised and that the Court has already

  1   dismissed.  Whether or not Title 18 has been validly

  2   enacted is a matter of a question of law.  This Court has

  3   already ruled on it.  He has not indicated that Mr. Holder

  4   would have any relevant testimony for the issues in this

  5   trial.

  6        THE COURT:  Court agrees with the Government.  That

  7   matter was brought to my attention.  I have denied the

  8   motion.  It is a legal matter that is not appropriate for

  9   presentation to this jury.  And, therefore, any testimony

 10   by Mr. Eric Holder or his designee is irrelevant to any of

 11   the issues in this case.

 12        U.S. Marshals, Jay Cripps, Julio Fitzgibbons or

 13   John Kammerzell.  What is the relevance of their

 14   testimony?

 15        DEFENDANT PAWELSKI:  The relevance of their

 16   testimony is that they came to my home to intimidate me

 17   after Mr. Watanabe either sent a letter, made a phone

 18   call, or whatever.  And, again, it is the Government's

 19   tech- -- a methodology that they were trying to get me to

 20   stop something that I have every right to do; and that is

 21   file a complaint against your Magistrate Watanabe.

 22        THE COURT:  That is fine.  But what does that have

 23   to do with the issues in this case?

 24        DEFENDANT PAWELSKI:  It has to do with the issues

 25   to show the jury that they will stop at nothing to get a

1    conviction.

2         THE COURT:  What did any of that have to do with

3    the issues in this case, as opposed to any complaint

4    against Judge Watanabe?

5         DEFENDANT PAWELSKI:  The only issue is that they

6    went outside of their jurisdiction.

7         THE COURT:  All right.  Mr. Kirsch?

8         MR. KIRSCH:  Your Honor, all of the reasons that

9    were previously given about the irrelevance of any issues

10   with respect to Judge Watanabe, still are true here.  The

11   Marshal Service simply has nothing to do with any of the

12   charges in this case.  They weren't involved in the

13   investigation.  They weren't involved in any of the

14   actions that are going to be the subject of testimony

15   during the course of this trial.

16        We think all three of those subpoenas should be

17   denied, as well.

18        THE COURT:  The Court finds that there is no

19   relevance of any testimony by the Deputy U.S. Marshals or

20   the U.S. Marshal, himself, as to the issues in this case

21   and, therefore, those subpoenas would be denied.

22        Karen Haas, Clerk of the U.S. House of

23   Representatives.

24        DEFENDANT PAWELSKI:  Again, Ms. Haas was the one

25   that wrote the letters about the Title 18 being invalid.

1    Goes back to the motion to dismiss.  Ms. Haas would give

2    us testimony and other documents that she would find that

3    she has on her file to show you that Mr. Kirsch

4    invalidated or has violated his oath of office by using a

5    law that is not a law to present charges to myself and my

6    friends.

7         THE COURT:  Again, this is the same argument.  I

8    assume that the Government would -- maybe with respect to

9    Eric Holder, this is a matter that I have already ruled

10   upon.  It is a legal issue, not a matter appropriate to

11   bring before the jury.  That matter has been resolved.

12   Therefore, the Court would deny any subpoena as to Karen

13   Haas.

14        Joseph Minard?

15        DEFENDANT PAWELSKI:  Same issue as Ms. Haas.

16        THE COURT:  So Title 18 again?

17        DEFENDANT PAWELSKI:  Yes, ma'am.

18        THE COURT:  For same reason, the Court denies any

19   subpoena with regard to Joseph Minard as being totally

20   irrelevant to any factual issues in this case.  Court has

21   already ruled on the legal issue of Title 18.

22        Douglas Shulman?

23        DEFENDANT PAWELSKI:  Douglas Shulman is the head of

24   the IRS.

25        THE COURT:  He is the U.S. Commissioner of the

1    Internal Revenue Service under Bush until 2012.

2         DEFENDANT PAWELSKI:  According to the website he is

3    still there.

4         THE COURT:  He is senior advisory right now with

5    McKinsey.

6         DEFENDANT PAWELSKI:  Then you know that.  All

7    right.

8         THE COURT:  What is the relevance of his testimony?

9         DEFENDANT PAWELSKI:  Again, the memorandums you

10   have received earlier, and also this week, show that the

11   1099 OID process, there is nothing illegal about it.  The

12   Government has not performed their fiduciary duty as far

13   as giving notification to the public.  They are now using

14   that as some type of crime without any congressional

15   oversight.

16        THE COURT:  Mr. Kirsch, the Government's response?

17        MR. KIRSCH:  Your Honor, to the extent that --

18   whether or not the Government has performed any fiduciary

19   duty with respect to notice is not going to be relevant in

20   the trial of this matter.  To the extent that Mr. Pawelski

21   has evidence that he had some belief that what he was

22   doing was not unlawful or not legitimate, I would presume

23   that he's going to have to introduce that testimony

24   through -- that he is going to have to introduce that

25   evidence by testifying himself.

 1          Mr. Shulman is not going to be able to offer any

 2     evidence about what Mr. Pawelski believed or didn't

 3     believe about the lawfulness of his actions with respect

 4     to 1099 OIDs.  The testimony that Mr. Pawelski has

 5     suggested that he would give wouldn't establish that and

 6     would otherwise be irrelevant, and we would oppose a

 7     subpoena to him, as well.

 8          THE COURT:  Court finds that any testimony by

 9     Douglas Shulman would be irrelevant to the issues involved

10     in this case and, therefore, the Court would deny that

11     subpoena.

12          David Ferriero.  I am not sure how to pronounce

13     that.

14          DEFENDANT PAWELSKI:  David Ferriero is the National

15     Archives Clerk.  And, again, he would bring information

16     about the Title 18 vote, which somehow you decided that

17     you have the power to make that an invalid law or invalid

18     motion without any investigation whatsoever.

19          THE COURT:  I ruled on it as a matter of law,

20     that's correct.  I denied the motion.

21          DEFENDANT PAWELSKI:  You ruled on it as a frivolous

22     document without any backup of facts or findings in law.

23          THE COURT:  Court finds any testimony by David

24     Ferriero, which is F-E-R-R-I-E-R-O, who is the head of the

25     National Archives, is irrelevant to the issues in this

1    case.  And if it were relevant to any matter, it would be

2    relevant to a legal matter, which this Court has already

3    ruled upon.

4         With respect to Curtis Morris, he's apparently an

5    unindicted co-conspirator.  What do you expect he will

6    testify to?

7         DEFENDANT PAWELSKI:  Well, Curtis Morris was a

8    professional tax preparer.  I used his alleged proper

9    information to make decisions on what I was doing.

10        THE COURT:  All right.  Mr. Kirsch, what is the

11   Government's position with respect to relevance?

12        MR. KIRSCH:  Your Honor, I, again, I think that

13   what Mr. Pawelski is saying is that he thinks that he may

14   be able to offer testimony from Mr. Morris with respect to

15   some sort of a good-faith defense that he might offer.  I

16   don't know whether or not Mr. Morris can provide support

17   for that.  I am not in a position to be able to say that.

18   So the Government is not, therefore, in a position to

19   oppose their request to subpoena Mr. Morris.

20        THE COURT:  It appears to this Court that Curtis

21   Morris is, at least at this point, based on the proffer

22   made by Mr. Pawelski, does have some relevance or could

23   have some relevant testimony.  Therefore, the Court would

24   sign a subpoena with respect to Mr. Morris for his

25   appearance here at trial.

1          DEFENDANT PAWELSKI:  I have a writ of habeas

2     corpus, if that is what you would like.

3          THE COURT:  At the end of this hearing I will take

4     care of that.  I will issue one with respect to him.

5          Jacqueline Jennings?

6          DEFENDANT PAWELSKI:  Alleged undercover agent.

7     That is the name she gave us.  I have no idea who this

8     woman was.  But she was coming to meetings.  She was

9     calling me up asking for information and documentation,

10    assistance with documentation.  That is the name she

11    provided me.  That is the name that we had; the only name

12    I know for this woman.

13         THE COURT:  All right.  Mr. Kirsch?

14         MR. KIRSCH:  Your Honor, we have her on our

15    will-call list.  We have her listed as "UC agent."  We are

16    still deciding if we really are going to call her or not.

17    But she is currently available to testify at the trial.

18    If we decide not to call her, we can certainly make the

19    Court aware of that.  I think it is likely that she will

20    testify as a Government witness in this matter.

21         THE COURT:  All right.  And with respect to --

22    there are -- I am going to jump ahead a little bit.  I am

23    going through the witnesses not on yours.  I didn't

24    realize she was on yours because she is not identified.

25         Mr. Pawelski, a large number of your witnesses are

1   also on the Government's witness list, and --

2          DEFENDANT PAWELSKI:  That is why I was tardy with

3   it, as I explained on the e-mail.

4          THE COURT:  Right.  So actually what I would want,

5   rather than issue subpoenas, Mr. Kirsch has already

6   indicated that they are under subpoena.  I just want a

7   commitment from the Government that whether you call them

8   or not, if Mr. Pawelski wishes to call them, they will be

9   available in his case.

10          DEFENDANT PAWELSKI:  My issue on that, Judge, is I

11   have certain documents I wouldn't want them to bring to

12   the Court.  That is why I would subpoena them.  And I

13   don't have a problem with --

14          THE COURT:  Well, I am not going to issue extra

15   subpoenas.  What documents do you need them to bring with

16   them?

17          DEFENDANT PAWELSKI:  Well, all of the documentation

18   they have on me and on the 1099 OID process.

19          THE COURT:  Mr. Kirsch?

20          DEFENDANT PAWELSKI:  I have the subpoenas written

21   for you.

22          MR. KIRSCH:  Your Honor, there are two issues

23   there.  The first is with respect to the additional

24   documents.  The Government's position is that many of the

25   additional documents that some of the these witnesses

1    might have with respect to Mr. Pawelski would be almost

2    entirely irrelevant to the charges in this case.

3            As an example, the witness Mary Perry, from the El

4    Paso County Court, the Government's understanding of the

5    facts is that there was a judgment entered against

6    Mr. Pawelski in the El Paso County Court.  The Government

7    intends to have Ms. Perry testify that that judgment

8    existed in a particular case number, and that that appears

9    to be the matter that is referenced in the OID document

10   that Mr. Pawelski created and filed in connection with one

11   of his tax returns.

12           If Mr. Pawelski means to have Ms. Perry bring the

13   entire El Paso County Court file with respect to the

14   underlying actions that involved him, the Government's

15   position would be that that would be irrelevant and

16   unnecessary and unduly burdensome on El Paso County.

17           The other issue with respect to those witnesses, if

18   I could, or I am happy to do this later if the Court would

19   prefer, just in terms of making the witnesses available,

20   the Government witnesses, the law enforcement witnesses,

21   absolutely we'll have available the entire time.  If there

22   are any other civilian government employees, we are going

23   to ask, and we would prefer to let Mr. Pawelski ask

24   additional questions during cross-examination, as opposed

25   to having them come back.

1          THE COURT:  That is exactly -- I was going to get

2     to that.  The way I conduct the witness exam is if you

3     call the witness and Mr. Pawelski has that person on his

4     list as well, all of the examination gets done at the same

5     time.  We are not calling them back in the defendants'

6     case.

7          MR. KIRSCH:  And that procedure is perfectly -- we

8     support that procedure, Your Honor.  The only other --

9          THE COURT:  The only way there would be an issue,

10    though, is if you do not call the witness, that that

11    witness, if Mr. Pawelski has them listed, would also be

12    made available in his case if he wishes to call them.

13         MR. KIRSCH:  I understand, Your Honor.

14         THE COURT:  So they would have to be on standby

15    even if you don't call them.

16         MR. KIRSCH:  I understand, Your Honor.  And the

17    only thing that I want to make sure I get clarification

18    on, is would that apply to the witnesses that we have on

19    our may-call list, as well?

20         THE COURT:  Yes.

21         MR. KIRSCH:  Witnesses on the may-call, as well?

22         THE COURT:  As long as he listed them, either you

23    are going to agree to have them available or I will issue

24    a subpoena.

25         MR. KIRSCH:  Understood, Your Honor.

1          THE COURT:  And I need to see the subpoena, because

2     I don't know how broadly -- because I am not going to let

3     you do discovery right before trial, Mr. Pawelski.  These

4     are issues that if you wanted documents, they should have

5     been subpoenas that came before me several months ago.  I

6     will need to take a look at how broadly your request for

7     documentation is.  But if it is your entire file related

8     to this, that is going to be overbroad.

9          DEFENDANT PAWELSKI:  It was impossible for me to

10     get it a couple months ago because I had no idea who the

11     Government was going to call.  I didn't get that until

12     last Thursday.

13          THE COURT:  Well --

14          DEFENDANT PAWELSKI:  I don't even know these

15     people.  I have never had any --

16          THE COURT:  Then just asking for the entire files

17     that they have on you is overly broad.

18          DEFENDANT PAWELSKI:  I have particular

19     documentation I am asking for.

20          THE COURT:  All right.  If you have particular

21     documentation that isn't going to require them spending

22     hours and hours bringing up every document.

23          DEFENDANT PAWELSKI:  The documentation I have

24     requested should take them maybe an hour to assemble.

25          THE COURT:  I have to take a look at what you are

1    asking for in each of the subpoenas.

2         DEFENDANT PAWELSKI:  Very well.

3         MR. KIRSCH:  Your Honor, what I would ask for leave

4    to do is, with the Court's now understanding of the

5    Court's procedure with respect to making the witnesses

6    available, is to have -- to go back and compare

7    Mr. Pawelski's witness list to our own with that idea in

8    mind, and then by whatever -- whatever deadline the Court

9    would impose for that, we could provide both to the Court

10   and Mr. Pawelski a revised list, and we could specifically

11   indicate whether we were removing any of the people from

12   our list that he wanted to call, so that both he and the

13   Court would be aware of the potential necessity of

14   subpoenas for those witnesses.

15        THE COURT:  Okay.  Well, the list -- I do have the

16   list.  I have created a spreadsheet that has a cross

17   reference as to what witnesses he wanted and which were on

18   your list.

19        MR. KIRSCH:  That is simply the step that we

20   haven't done yet, Your Honor.  So if we could be allowed a

21   couple of days to do that, to talk about that and make

22   sure that we are certain about which witnesses we need and

23   which ones we don't, it may be that we take some of the

24   witnesses off of our may-call list, for example,

25   understanding the procedure that the Court intends to

1    follow for the trial.

2         THE COURT:  So, Mr. Pawelski, what I am trying to

3    understand from your perspective, is if the Government

4    isn't going to call a witness, do you still want to have

5    them subpoenaed?

6         DEFENDANT PAWELSKI:  Yes, ma'am.

7         THE COURT:  So it won't make any difference whether

8    you take them off your list or not.  Everybody you listed

9    he wants subpoenaed here and ready to go.  And I have to

10   assume if you put them on your list, they did have some

11   relevant testimony to give.

12        MR. KIRSCH:  I think that is generally true, Your

13   Honor.  There are some witnesses, for example, who are the

14   witnesses who signed 902-11 declarations.  We intend to

15   rely on 902 declarations to admit some business records,

16   and we have provided the defendants with notice of our

17   intent to do that.

18        We have those witnesses on our may-call list

19   essentially as a backup, in case something went wrong.

20   Looking -- and that is one of the witnesses, for example,

21   that Mr. Pawelski has on his list A. Hettinger from

22   Comcast.  The Government really has no intent to call

23   Ms. Hettinger, nor do we think there will be any need for

24   us to call Ms. Hettinger.  And the Government has provided

25   Mr. Pawelski with all of the documents that it received

1    from Comcast in response to the subpoena that was issued.

2         So that is an example of a person -- I understand

3    the Court may well issue that subpoena.  I wanted the

4    Court to have a little more background about why I was

5    saying that.

6         THE COURT:  All right.  So I am just trying to

7    understand, because I am not going to issue subpoenas just

8    for the sake of issuing them.  Now, are you saying that

9    all of the documents -- Ms. Hettinger produced all of the

10   documents that she believed were relevant?

11        MR. KIRSCH:  She produced the documents that were

12   subpoenaed from Comcast during this investigation.  I

13   don't know what additional documents Mr. Pawelski thinks

14   Ms. Hettinger might have that might be relevant.

15        THE COURT:  All right.  Well, what I am going to

16   order, because I am not going to order 53 subpoenas --

17        DEFENDANT PAWELSKI:  Obviously.

18        THE COURT:  -- in this case, without knowing what

19   the relevance is of that and how broad your description of

20   what documents they need to bring.  Normally how I handle

21   this is the defendants agree that as long as the

22   Government makes those witnesses available, and all of the

23   documents that the Government has received from each of

24   these witnesses has been given to the defense, then that

25   is how we proceed.

```
 1          So what I am going to require is that you will have
 2   to produce the actual subpoenas with the language that you
 3   want.  I want those given to the Government so that the
 4   Government can go through and let us know.  Then you all
 5   need to submit to me the justification for that broad or
 6   the opposition to that broad of a subpoena.
 7          MR. KIRSCH:  Yes, Your Honor.  When would you like
 8   those to be submitted, Your Honor?
 9          THE COURT:  Well, we are fortunate that this
10   pretrial conference is taking place so far in advance.  Of
11   course, so I would say by -- today is Thursday.  I would
12   say next Thursday.  So you have a week to get this all
13   done.  That is with respect to the witnesses that are both
14   on the defense list and the Government's list.
15          So let's go back.  Jacqueline Jennings is on the
16   Government's list as the unidentified --
17          MR. KIRSCH:  List as the UC agent.  She is at the
18   end of our will-call list, Your Honor.
19          THE COURT:  All right.  Then you have a number,
20   Mr. Pawelski, of experts; Jimmy Holden, an IRS expert.
21   Joseph Bannister, an IRS expert.  Edward Griffin, an IRS
22   expert.  Art Kimbrel -- no, actually, he is not.
23   Dr. Eugene Schroeder, a Federal Reserve expert.
24          Now, I did not see any expert disclosures that were
25   made in this case.  I don't know, Mr. Kirsch, if any have
```

1    been made by the defendants.

2         MR. KIRSCH:  We have not received any, Your Honor.

3         THE COURT:  And I am not sure -- it appears to me

4    that the IRS experts -- what are they going to testify to,

5    Mr. Pawelski?

6         DEFENDANT PAWELSKI:  The relevance of the 1099 OID,

7    as far as not being a -- there is nothing -- I have

8    already shown you that what I did is perfectly legal and

9    lawful.  The Government -- the alleged Government, the

10   IRS, was a bureau of the Treasury Department, did not

11   provide any public notice that they have some type of memo

12   or something else, because there is no law that Congress

13   has created that says what we did was unlawful or illegal.

14        THE COURT:  And so they are going to come in and

15   testify that what did you is lawful and legal?

16        DEFENDANT PAWELSKI:  That's correct.

17        THE COURT:  That is a legal matter not for an

18   expert to do.  You didn't give any notice to the

19   Government.  And under the rules you are required under

20   16(b)(1)(C), and the order issued at the beginning of this

21   case, you are required to give the Government a written

22   summary of any testimony that you intend to use under Rule

23   702, 703 or 705 of the Federal Rules of Evidence.

24        And those Rule 16 provisions are intended to allow

25   the Government -- and the Government reciprocally, for the

1    defendants to learn about what experts are expected to

2    testify to, notice of their qualifications, which in turn

3    would then allow the Government or the defendant to

4    determine whether that witness is -- and this Court,

5    actually, is in fact an expert within the definition of

6    Federal Rule of Evidence 702.  And you're also to provide

7    a summary of the expected testimony.

8           In Document No. 38, on pages 6 and 9, the

9    defendants were required to provide those disclosures on

10   or before November 3rd of 2013.  So almost a year ago.

11   And you did not file any disclosures.  Why didn't you do

12   that?

13          DEFENDANT PAWELSKI:  I had no idea, because at the

14   time I was represented by Mr. Stuckey.  He was handling

15   that.  I didn't have any idea what was going on there.

16   Not that Mr. Stuckey did anything wrong.

17          THE COURT:  Okay.  In this particular case, I am

18   trying to figure out what the relevance would be of that

19   testimony.

20          DEFENDANT PAWELSKI:  The relevance is nothing has

21   been done illegally.

22          THE COURT:  So it is testimony as to a legal

23   matter?

24          DEFENDANT PAWELSKI:  If that is what you wish to

25   call it.  Because these charges against us are just bogus

1      and fraud.

2              THE COURT:  Mr. Kirsch, Government's response?

3              MR. KIRSCH:  Your Honor, we are boxing in the dark

4      a little bit here still.  But, again, as near as I can

5      tell, Mr. Pawelski wants to offer testimony from these

6      purported experts about what the law is and/or what the

7      law means.  That is not a proper question for the jury, it

8      is the question for this Court.  And, therefore, it

9      doesn't appear that they have any relevant testimony to

10     offer.

11             I can tell the Court, the one person that is listed

12     as an expert about whom the Government has any information

13     as we sit here today, is the person named Jimmy Holden.

14     As far as the Government is aware, Mr. Holden is a

15     citizen.  He's not a lawyer.  And we are unaware of him

16     having any specialized training or expertise with respect

17     to the law generally or, more specifically, with respect

18     to tax laws.

19             I suspect that this same may be true of the other

20     experts, but I don't have sufficient information to be

21     able to tell the Court that.

22             THE COURT:  All right.  Expert testimony is allowed

23     under Rule 702 of the Federal Rules of Evidence if the

24     testimony would help the trier of fact understand the

25     evidence and to determine a fact in issue, and that the

1    testimony is based on sufficient facts and data and is the

2    product of reliable principles and methods.  And it is the

3    proponent of that expert testimony that bears the burden

4    of showing that that expert testimony is admissible.  That

5    is <u>United States v. Nacchio</u>, 555 F.3d 1234, Tenth Circuit,

6    2009.

7         This Court has been provided with nothing that

8    would tell me whether the proposed testimony would be

9    reliable or relevant.  And, from what Mr. Pawelski has

10   indicated, the expert would testify as to a legal matter,

11   not a factual matter.

12        So at this point the Court is going to deny any

13   subpoena with respect to the experts who would testify as

14   to what the IRS law is or is not.  The legal instructions

15   are for me to give to the jury.  The jury takes the facts

16   as the testimony provides them.  I tell them what the law

17   is.

18        So I find that all of those experts, based on the

19   proffer that was made by Mr. Pawelski, would be testimony

20   as to matters that are not within the realm of an expert

21   opinion and, therefore, the Court would deny those

22   subpoenas.

23        You also have Robert Davis, who is listed as a

24   Title 18 investigation, and Art Kimbrel to explain

25   meetings agenda.  I am not sure, Mr. Davis, is he going to

1    testify as to the same issues that we had with the others,

2    as to the validity of Title 18?

3         DEFENDANT PAWELSKI:  That is correct.

4         THE COURT:  All right.  The court finds that is a

5    legal matter.  That would not be an appropriate -- that

6    would not be appropriate testimony in this case and,

7    therefore, the Court would deny the subpoena of Mr. Davis.

8         Art Kimbrel, explain meetings agenda, what is that?

9         DEFENDANT PAWELSKI:  This woman, which we know as

10   Jacqueline Jennings, the undercover agent, came to many,

11   many meetings with Mr. Kimbrel as the master of

12   ceremonies, if you will.  And he would just give an

13   overview of what the meetings were about, versus what

14   Ms. Jennings may purport they were about.

15        THE COURT:  All right.  Mr. Kirsch, what is the

16   Government's response?

17        MR. KIRSCH:  Your Honor, again, I can at least

18   envision a situation in which Mr. Pawelski could

19   potentially call Mr. Kimbrel properly to rebut testimony

20   from the undercover agent or to impeach the undercover

21   agent's credibility.  So we wouldn't oppose the issuance

22   of that subpoena.

23        THE COURT:  It appears to me Mr. Kimbrel may have

24   some relevant testimony here based on the proffer made by

25   Mr. Pawelski.  So, therefore, the Court will sign the

1        issuance of a subpoena for Mr. Kimbrel.

2            I believe that deals with all of the witnesses that

3    were not listed as witnesses for the Government.

4            Mr. Pawelski, do you agree?

5            DEFENDANT PAWELSKI:  You threw most of them out,

6    yes.

7            MR. KIRSCH:  Can I ask one question, just to

8    clarify, Your Honor.  On the list that I have,

9    Dr. Schroeder is listed as a Federal Reserve expert as

10   opposed to an IRS expert.  I just wanted to determine

11   whether or not he was within the group that Mr. Pawelski

12   described as providing the testimony about Title 18 and/or

13   the legality of his conduct.

14           THE COURT:  That was my understanding.  So I

15   thought he did, but I guess I should make sure we get that

16   clear on the record.  Dr. Eugene Schroeder, you have him

17   listed as a Federal Reserve expert.  To what will he

18   testify?

19           DEFENDANT PAWELSKI:  He will testify about the

20   validity of the promissory notes and the bonds.

21           THE COURT:  Mr. Kirsch?

22           MR. KIRSCH:  Can I have just one moment, please,

23   Your Honor?

24           THE COURT:  You may.

25           MR. KIRSCH:  Your Honor, again, I don't think that

1    -- again, the defendants prepared these documents called

2    "bonded promissory notes" and a variety of other documents

3    that are at issue in this case.  I don't believe that an

4    expert opinion about the validity of those documents is

5    relevant or helpful to the jury in this case.

6         Mr. Pawelski's or the other defendants' beliefs

7    about the validity of those documents might be relevant,

8    but there has been nothing in Mr. Pawelski's proffer that

9    would indicate that Dr. Schroeder has relevant admissible

10   testimony that goes to his state -- Mr. Pawelski's state

11   of mind or any of the other defendants' state of mind.  So

12   we would oppose the subpoena based on the current proffer.

13        THE COURT:  I agree.  Dr. Schroeder is a closer

14   call than the others.  But, Mr. Pawelski, if you wish to

15   have me sign a subpoena for his testimony, you are going

16   to have to show me how his testimony is relevant to

17   anything other than a legal issue.  And the validity of

18   the promissory notes and bonds appears to me to be a legal

19   issue.

20        In addition, you would have to provide a basis for

21   your failure to disclose, because you have him listed as

22   an expert, so he is going to give expert testimony.  I

23   have no idea what his qualifications are.  I have no idea

24   what his testimony would be based upon.  And that would --

25   I have an obligation to find that it is both reliable and

1    relevant.

2         So if you want me to issue a subpoena, you will

3    have to give me and the Government a better proffer than

4    what you have done today.  So I will give you time to do

5    that by next Thursday, as well.  So I will withhold ruling

6    on Mr. Schroeder.

7         So that means today I am willing sign a subpoena

8    for Curtis, Morris and Art Kimbrel from the defendants'

9    list.

10        DEFENDANT PAWELSKI:  Well, then we need -- I need

11   some documents from the Government witnesses which are

12   relevant to my defense.

13        THE COURT:  All right.

14        DEFENDANT PAWELSKI:  One of those being their

15   bonus, the ones they get based on Section 25, which I

16   requested from Mr. Rutkowski, but he denied me of that,

17   but, anyway, that's okay.

18        The IRS Code states, in Section 25, that people

19   that put people in prison, IRS agents that put people in

20   prison get bonuses.  Therefore, I would like to have a

21   match up of the time of arrest versus their performance

22   payments.  And I believe the Court will see that the only

23   reason these people go after honest Americans is because

24   they are going to make some extra money off of it.

25        THE COURT:  But you are not talking about with

 1     respect to you, you are talking just in general?

 2             DEFENDANT PAWELSKI:  With respect to me.  No, they

 3     will have to bring in --

 4             THE COURT:  IRS agents do not put people in prison.

 5             DEFENDANT PAWELSKI:  IRS agents go after people and

 6     them bring them to folks like yourself and Mr. Kirsch to

 7     put them in prison.

 8             THE COURT:  To have them tried by a jury of their

 9     peers.  It is the jury that decides whether or not they

10     are guilty.

11             DEFENDANT PAWELSKI:  Well, we could argue about a

12     jury of peers all day long, Judge.  But my point is that

13     they get bonuses for incarcerating folks.

14             THE COURT:  Mr. Kirsch?

15             MR. KIRSCH:  Your Honor, I have not been able to

16     access that statute as Mr. Pawelski has been talking.

17     This is certainly the first that I have ever heard of such

18     a law.  It is not my understanding that that is the

19     practice.

20             If Mr. Pawelski believes that is the practice, he

21     will have the opportunity to cross-examine any of the IRS

22     or other employees about whether or not they have received

23     particular bonuses in connection with the arrest of him or

24     any of the other defendants.

25             I don't believe he has made any kind of a

 1    sufficient showing to justify the invasive and potentially

 2    far-reaching request that he's making for payroll records

 3    of the various Government witnesses in this case, and we

 4    would oppose that.

 5         THE COURT:  All right.  The Court is not going to

 6    grant a subpoena for those documents without more evidence

 7    from Mr. Pawelski that IRS agents --

 8         DEFENDANT PAWELSKI:  Judge, should I send you

 9    Section 25.

10         THE COURT:  No, you cannot send it to me.  I want

11    you to submit a brief that outlines where you got this

12    information and which witnesses we're talking and what

13    records you are actually seeking.  That will be submitted

14    by Thursday of next week, as well, close of business.

15         DEFENDANT PAWELSKI:  Let me write this down, if you

16    don't mind.  You want a brief where I got the documents?

17         THE COURT:  I want a brief that would substantiate

18    your claim that IRS Section 25 would, indeed, in some way,

19    impact the credibility, because that is where I see it as

20    being relevant.  It that would be the case, it would go to

21    the credibility of the witnesses when they testify, and

22    how the documentation you are seeking from them would be

23    relevant to that issue of credibility.

24         And, again, these are all documents that should

25    have been sought well before this case going to trial, but

1    I will allow you until next Thursday to get that

2    submitted.

3              DEFENDANT PAWELSKI:  Okay.

4              THE COURT:  All right.  Any other issues with

5    respect to the witnesses?

6              DEFENDANT PAWELSKI:  There are a couple motions

7    outstanding, though, that need to be ruled on.

8              THE COURT:  I don't think we have any motions

9    outstanding.  I went through the motions that were

10   outstanding.  The objections to exhibits and the motion to

11   strike 278 and --

12             DEFENDANT PAWELSKI:  I put a motion in -- I mailed

13   it last Friday.  It should have got here Monday, for an

14   investigator to talk to Curtis Morris.

15             THE COURT:  I haven't seen it.

16             DEFENDANT PAWELSKI:  Huh.

17             THE COURT:  Normally those --

18             DEFENDANT PAWELSKI:  I sent it to the Clerk.  He

19   was to disburse it.

20             THE COURT:  I don't see anything.

21             DEFENDANT PAWELSKI:  Okay.

22             THE COURT:  You might want to go down to the

23   clerk's office, because the last thing I have filed of

24   record was a corrected notice by Mr. Brokaw to -- oops,

25   let me get to yours.  I don't see anything in here.  So

1    you might want to go down and find out from the clerk's

2    office, because I don't see any request for -- that was

3    submitted in the last -- or submitted this week in your

4    case.

5        So you need to go down to the clerk's office and

6    make sure that gets to my attention.

7        Did you have any other motions, then, other than

8    that?

9        DEFENDANT PAWELSKI:  Seems to me there was.  I

10   didn't bring it with me, I am sorry.

11       THE COURT:  All right.  Well, if there are, you

12   need to bring it.  Because the only motions that I have

13   that are still outstanding are the two I identified

14   previously, which were the objections to the exhibits and

15   the motion to strike.

16       DEFENDANT PAWELSKI:  The other motion I need to put

17   in -- I guess I don't know if you need a written motion or

18   not, to be able to talk to the other defendants on a

19   regular basis.  Ms. Vigil --

20       THE COURT:  I will need that in writing.

21       DEFENDANT PAWELSKI:  And the witnesses, of course.

22       THE COURT:  There is no order that I know of that

23   prohibits you at this point from talking to witnesses.

24       MR. Stuckey?

25       MR. STUCKEY:  I think the bond order way back when,

1    Your Honor, had a blanket prohibition against talking with

2    co-defendants or witnesses in the case.

3         THE COURT:  I thought I had lifted that when they

4    went pro se.  I thought I lifted the requirement or the

5    restriction that they couldn't talk to each other.

6         MR. STUCKEY:  That's correct.

7         DEFENDANT PAWELSKI:  You lifted it for myself and

8    Mr. Brokaw.

9         MR. STUCKEY:  Not about witnesses, because later on

10   came the pro se motion to act pro se.

11        THE COURT:  Okay.  All right.  The Court will lift

12   the restriction from the bond conditions precluding you

13   from talking to prospective witnesses in this case.

14        DEFENDANT PAWELSKI:  And Ms. Vigil?

15        THE COURT:  She has not made a motion to me.  But I

16   have already lifted the restriction, I believe, that you

17   can talk to the co-defendants about the case.

18        DEFENDANT PAWELSKI:  Very well.

19        THE COURT:  All right.

20        DEFENDANT PAWELSKI:  So I have a question.

21        THE COURT:  Yes.

22        DEFENDANT PAWELSKI:  Previous hearings and in

23   responses from prosecuting attorney, it has been

24   determined that this Court falls under Article III of the

25   Constitution, which means that all my constitutional

```
 1      rights have been secured.  Am I correct there?
 2              THE COURT:  I am not given you any legal advice.
 3              DEFENDANT PAWELSKI:  Okay.  I am not asking for
 4      that.  I am just asking to verify whether or not that --
 5              THE COURT:  This is an Article III court, yes.
 6              DEFENDANT PAWELSKI:  Very good.  In an Article III
 7      court, I have a right to face my accuser; am I correct
 8      there?
 9              THE COURT:  You have the right to face, under the
10      Constitution, you have right to confrontation, yes.
11              DEFENDANT PAWELSKI:  Very good.  The Indictment
12      claims the United States of America is the claimant.
13      Mr. Kirsch, in one of his replies, said the Federal
14      Government was the claimant.  And you, ma'am, said the
15      U.S. Government was the claimant.
16              I am trying to find out which SOB within that
17      organization I can talk to and ask them why they filed a
18      claim against me.
19              THE COURT:  That is not for me to advise you on.
20      The U.S. Government, the Federal Government, the entities
21      that you listed are not actual flesh and blood people --
22              DEFENDANT PAWELSKI:  Exactly.
23              THE COURT:  -- they act through those, and that is
24      the witnesses that Mr. Kirsch has listed.  That is for you
25      to figure out who it is that you need to talk to about
```

1    that.

2         And please do not use terms like "SOB" in this

3    courtroom.

4         DEFENDANT PAWELSKI:  Sorry about that.  So you are

5    telling me -- and I am not, by any means, a legal expert.

6    I do know that if there is a claim against someone they

7    have to file an affidavit of a claim and have proof of

8    some type of damages.  Am I correct there?

9         THE COURT:  I am not giving you legal advice.  And

10   this a criminal case, it is not a civil case.  There was

11   an indictment that was filed appropriately, was issued by

12   the grand jury, and that is what we are proceeding to

13   court on.

14        Si I am not going to get into a discussion of the

15   rights.  This is the final trial prep conference to

16   prepare for a trial.  In this case we have gone through

17   who the witnesses will be.  I need to cover a few other

18   things, then I have to recess because I have another

19   appointment.

20        We will have a jury of 12 jurors, and in this case,

21   I believe that the Government estimates that the case will

22   go 2 to 3 weeks.

23        MR. KIRSCH:  Your Honor, we expect that we are

24   going to rest our case sometime in the middle of the

25   second week.

```
 1              THE COURT:  So I set aside 3 weeks, just to make
 2    sure that the defendants have sufficient time.  Because it
 3    is going 3 weeks, I am going to go ahead and empanel two
 4    alternates.  The defendants will get 11 strikes --
 5    peremptory strikes that you can strike from the jury.
 6    Government will get 7.  That is the 10 plus the 6 that the
 7    rules allow, plus one extra for the alternates.
 8              There will be 31 sitting in the box here.  The
 9    seats will be numbered, starting in the back row closest
10    to me, that is 1 through 8.  9 through 16.  Then have
11    chairs in the front that will go 17 through 31.  That is
12    the way the jurors will be seated.
13              The jurors will each have a number button, and the
14    strikes after the voir dire, which I will conduct -- there
15    will be no voir dire conducted by the parties.
16              Ms. Hartmann, do you have the strike sheet, because
17    I do my strikes a bit differently than other judges.  We
18    will do simultaneous strikes.  Defendants will get 11 that
19    they will have to figure out how they want to divvy among
20    themselves.  You can use all 11 of your strikes, you can
21    use none of your strikes, whichever you prefer.
22              The strike list will be handed at the end of that.
23    There will be jurors sitting in there.  They have their
24    juror buttons.  So the first column is the chair number.
25    As I said, 1 through 8.  9 through 16.  And then 17
```

1    through 31.  The juror number will be their badge number.

2    So if we replace No. 4 as first juror to be replaced,

3    they will be replaced with No. 32.  Then you will strike

4    those.

5         The first 14 left in the box will be the jury.  So

6    if there are -- if the Government strikes the same ones as

7    the defendant, it is going to be the first 14 in the jury

8    box will be the jury.  The alternates will not be decided

9    until the end of the trial.  So we won't know who they

10   are.  They will be drawn from the box there at random.

11   Those two will be removed.  They will be the alternate

12   jurors.

13        Any questions?

14        DEFENDANT PAWELSKI:  Yes.  The other motion -- I

15   remember now, I put a motion in for --

16        THE COURT:  We are not back to that.  I am talking

17   jury selection at this time.

18        DEFENDANT PAWELSKI:  No.  This is pretty

19   straightforward.

20        MR. KIRSCH:  Your Honor, one question.  Am I

21   correct to assume that any challenges for cause --

22        THE COURT:  Will be before.

23        MR. KIRSCH:  -- those will be handled first?

24        THE COURT:  Exactly.  We will do any challenges for

25   cause.  I will voir dire.  I will then ask you all whether

1    there are any additional questions that I failed to ask or

2    if there any challenges for cause.  And then if there are,

3    we will replace those jurors.  We will go through, and

4    whoever is there, we will get to the peremptory strikes.

5           MR. KIRSCH:  Thank you, Your Honor.

6           DEFENDANT PAWELSKI:  Is that 11 strikes for each of

7    us?

8           THE COURT:  You have 11.  You figure out how to

9    divvy them.

10          DEFENDANT PAWELSKI:  Okey dokey.

11          THE COURT:  All right.  Jurors will be allowed to

12   take notes.

13          I have looked at the voir dire that has been

14   submitted.  To the extent that the questions are

15   reasonable and non-argumentative, I will include those in

16   my voir dire.  If they are legally argumentative, they

17   will not be included.  As I stated, there will be no

18   additional voir dire by the parties.

19          The Government has submitted proposed jury

20   instructions, the defendants have not.  I have tried a

21   number of these tax evasion cases, so I am familiar with

22   the instructions that need to be given.

23          I will use the Government's summary of the charges

24   against the defendants in the preliminary instructions as

25   a statement for voir dire to advise the jury as to what

1     this case entails.

2          I will try to get my proposed version of the

3     instructions to the parties before the trial, but I can't

4     guarantee that that is going to happen.  We will have the

5     charging conference at or near the close of the

6     Government's case.

7          Now, generally when I read the jury instructions I

8     read them verbatim as they are presented, and each of the

9     jurors will have their own copy of the jury instructions.

10    I normally do not require Ms. Martinez to actually

11    transcribe those because they are written verbatim, and

12    then that instruction gets docketed in the Court docket.

13         But if anybody objects to my not having

14    Ms. Martinez transcribe those instructions as I read them,

15    let me know now and I will make her transcribe them.

16         MR. KIRSCH:  No objection from the Government, Your

17    Honor.

18         DEFENDANT PAWELSKI:  I don't have any objection to

19    that.

20         THE COURT:  All right.  Ms. Vigil?

21         MS. VIGIL:  No objection.

22         THE COURT:  So the court reporter does not need to

23    transcribe the final reading of the jury instructions.

24         I assume that the parties do want to have the

25    witnesses sequestered.  I am going to sequester them.

1      That means that all but the parties and any advisory

2      witnesses would be excluded from the courtroom at all

3      times except when they are called to testify.

4              If they are waiting to testify or after they have

5      testified, they cannot discuss their testimony with any

6      other witnesses or with anyone else other than counsel for

7      the Government or the defendants, themselves.

8              And if there is any violation of this directive,

9      that not only will subject the witness to contempt of

10     court, but it also could disqualify that person as a

11     witness in this case.

12             So you all need to let your witnesses know that

13     they cannot come into the courtroom.

14             MR. KIRSCH:  Can I ask a question on that point,

15     Your Honor?

16             THE COURT:  You may.

17             MR. KIRSCH:  It was the Government's hope, both of

18     the case agents potentially could testify in this matter.

19     It was the Government's hope that we might use one as an

20     advisory witness at counsel table and one in order to run

21     our document presentation system Sanction, so I wanted to

22     ask --

23             DEFENDANT PAWELSKI:  I object.

24             MR. KIRSCH:  -- whether that is permissible.

25             THE COURT:  No.  You get one advisory witness.  You

1    find somebody else to run the equipment.

2        MR. KIRSCH:  Thank you, Your Honor.

3        THE COURT:  You cannot leave the podium.  You will

4    stand behind the podium for all openings, closings,

5    cross-examination, direct examination.

6        And if there are any unusually spelled words or

7    names, those need to be given to Ms. Martinez by 4 o'clock

8    on the Friday before trial.

9        All right.  Now, Mr. Pawelski, any additional --

10       DEFENDANT PAWELSKI:  Yes, I put a motion in to you

11   for the prosecuting team to get me the addresses of their

12   witnesses.  I have no idea who these people are, where

13   they are at.

14       THE COURT:  Well --

15       DEFENDANT PAWELSKI:  You apparently don't have that

16   either, because that was sent on Monday -- mailed on

17   Monday.  And if you don't have the Friday information.

18   Well, Mr. Stuckey has a copy -- that is the copy I sent.

19   I just ask you to issue an order to the Department of

20   Justice prosecutor to provide -- spelled incorrectly --

21   contact information for all of their witnesses being

22   presented so I can give them a subpoena duces tecum and

23   have them bring the --

24       THE COURT:  Well, you don't get to issue a subpoena

25   duces tecum until I approve there is a basis.

1          DEFENDANT PAWELSKI:  So you are saying I don't need

2     the addresses at this time?

3          THE COURT:  Not at this time, because that is what

4     you have to submit to me.  You either work with the

5     Government to get this agreement, or you have to submit to

6     me by Thursday of next week your justification for why I

7     should issue a subpoena duces tecum and how broad that is

8     going to be, because I am not just going to issue a

9     subpoena that says they have to bring every file they have

10    related to this case.  That is what we talked about

11    earlier in this hearing.

12         DEFENDANT PAWELSKI:  We did.

13         THE COURT:  All right.  Anything further?

14         MR. STUCKEY:  The writ.

15         DEFENDANT PAWELSKI:  The writ.  The writ of habeas

16    corpus for Mr. Morris.

17         THE COURT:  Yes, I have the two.  If you have the

18    subpoenas, as I indicated, if you have the subpoena or the

19    writ of -- I never can pronounce it -- ad testificandum

20    for Mr. Morris, and if you have a subpoena for

21    Mr. Kimbrel, I will sign those at this time.

22         DEFENDANT PAWELSKI:  I don't have the subpoena for

23    Mr. Kimbrel as of yet.  I could write that out for you.

24         THE COURT:  All right.  If you can get that to me,

25    I will go ahead issue that.  If you give the writ to

1     Ms. Hartman, I will sign that at this time.

2          MR. KIRSCH:  I have three, I think, all brief

3     questions, if I might, Your Honor.

4          THE COURT:  You may.

5          MR. KIRSCH:  First is, I just want to confirm that

6     we are doing -- the jury selection will begin on November

7     3rd, we are not going to do that in advance.

8          THE COURT:  We are not going to do it early.  I

9     just don't have time to do it earlier.

10         MR. KIRSCH:  Understood, Your Honor.  The second is

11    I wanted to find out whether or not it would be

12    permissible for the Government to use a Power Point during

13    its opening and, if so, whether or not that depends upon

14    whether or not any actual exhibits would be contained

15    within the Power Point.

16         THE COURT:  Parties may use Power Point as long as

17    everything that is referred to in that opening statement

18    is going to be introduced at trial.  So if you don't know

19    whether or not you are going to be able to lay the

20    foundation or there is an issue, then I would suggest that

21    you don't use any exhibits that might be subject to

22    question.

23         MR. KIRSCH:  Understood.  Thank you, Your Honor.

24         The last issue is something that I just wanted to

25    make the Court aware of.  We learned about this today, and

1     will be providing the defendants with a memorandum that

2     reflects this.  One of the Government's witnesses, Michael

3     Pryor, who was a revenue officer, was told by a TIGTA --

4     he was a person -- he was a revenue officer who was

5     involved in collection activities with respect to

6     Mr. Brokaw.

7             Ordinarily, revenue officers, one of their first

8     steps that they take is to make a personal contact with

9     the people that they are trying to collect from.

10    Mr. Pryor was told by a TIGTA special agent that he should

11    not go to Mr. Brokaw's house and attempt to personally

12    contact him because that could potentially be dangerous

13    for Mr. Pryor.

14            We have instructed the witness not to testify about

15    that fact, and we have specifically told him that we don't

16    intend to elicit that testimony.  I wanted to make the

17    Court aware of that.  I intend to object if I think there

18    is a defense question that might elicit that testimony.

19    And so I just wanted to make the Court aware of that

20    issue.

21            And that if I -- if necessary, I would request for

22    permission to lead the witness in order to avoid that

23    testimony just on that point.  I don't expect that it will

24    be an issue, but I wanted to make the Court aware of it.

25            THE COURT:  At the time of the trial you may raise

1    that, but generally, you work with your -- is Mr. Pryor a

2    Government witness?

3         MR. KIRSCH:  He is a Government witness.  He is a

4    retired IRS revenue officer.

5         THE COURT:  I think you need to discuss that with

6    him.  I won't allow you to lead him.

7         MR. KIRSCH:  Fine, Your Honor.  Thank you.

8         THE COURT:  All right.  I have signed this.  These

9    need to be taken downstairs and given to the clerk's

10   office.  They need to be docketed.  And this is the motion

11   for writ of habeas corpus ad testificandum, in order for

12   the writ to be issued.

13        All right.  Is there anything further?

14        MR. STUCKEY:  Your Honor, if I might.  I think

15   Mr. Pawelski misspoke when he indicated that he filed a

16   motion for -- a renewed motion for an investigator under

17   the Criminal Justice Act last week.

18        DEFENDANT PAWELSKI:  I mailed it Friday of last

19   week.

20        MR. STUCKEY:  Way back when, Your Honor denied,

21   without prejudice, a motion for advisory counsel and an

22   investigator in his case.  Shortly thereafter -- and you

23   had ordered him to submit a financial statement and the

24   rest of it.  And there were two docket entries made.  I

25   think that was in March.  So I'm pretty sure that when he

1    filed this motion -- additional second motion for an

2    investigator, it is way back on the docket.

3        He might have thought he filed it last week again,

4    but I don't think so, or else --

5        THE COURT:  I don't have any outstanding motions in

6    his case other than his objection to exhibits, which is

7    Document No. 278, and then there was a motion to strike

8    that I reserved ruling on that I don't see a gavel on

9    here, but I know that was outstanding.

10       So if he has anything, he needs to get it filed

11   ASAP, because I have nothing with an outstanding gavel.

12       MR. STUCKEY:  I understand that.  I will work with

13   him.  I understand that.  I was pretty sure he did it way

14   back when, because even though I had withdrawn, he had

15   asked me some questions about what he should say in a

16   motion for an investigator.  And I think I told him

17   probably what to say, and I thought he filed it then.

18       THE COURT:  If you find it in the docket, let me

19   know if it hasn't been denied, but I would say the easiest

20   thing would be just to re-file.

21       MR. STUCKEY:  Very good.  Absolutely.

22       THE COURT:  All right.  Ms. Hartmann, would you

23   have the Marshals please bring Mr. Brokaw back into the

24   courtroom.

25       MR. KIRSCH:  Your Honor, while we are waiting, can

1     I have permission to approach Mr. Pawelski and Ms. Vigil

2     and ask them a question about the format in which they

3     want copies of Government's exhibits.

4              THE COURT:  You may.

5              MR. KIRSCH:  Thank you.

6              MR. STUCKEY:  Your Honor, pro se counsel,

7     Mr. Pawelski, doesn't need me any further this evening,

8     may I be excused?

9              THE COURT:  You may be excused.

10             These are the subpoenas, Mr. Pawelski, that you

11    wish to have me issue?

12             DEFENDANT PAWELSKI:  Yes, ma'am.

13             THE COURT:  All right.  Well, you need to, as I

14    indicated, if these are --

15             DEFENDANT PAWELSKI:  Should I take the ones back

16    that are the Government's witnesses?

17             THE COURT:  Actually, to the extent they are, you

18    need to submit to me -- like I said, Mr. Colwell, he is

19    not going to be appearing to testify in this case because

20    his testimony is totally irrelevant.

21             DEFENDANT PAWELSKI:  No, no, all I want from him is

22    the documents.

23             THE COURT:  Well, the Grand Jury True Bill, you can

24    obtain that from the Government.

25             DEFENDANT PAWELSKI:  I have asked the Government,

1    and you have agreed to tell them to get it to me, and I

2    have never got it.  He gave me the Indictment.

3         THE COURT:  That is the True Bill.

4         MR. KIRSCH:  Mr. Pawelski has a copy of the

5    Indictment.  I believe he is attempting to obtain one with

6    the ink signature of the foreperson, and the Court's rules

7    don't allow Mr. Pawelski to obtain that.  The Court's

8    rules don't post the Indictment in the first place unless

9    that valid signed Indictment is on file in the clerk's

10   office.

11        THE COURT:  You have already issued a writ for

12   Mr. Morris, so you don't need a subpoena.

13        DEFENDANT PAWELSKI:  Okay.

14        THE COURT:  And, actually, you have already had

15   these issued by the Clerk.  I guess you got blank copies

16   downstairs.  The question is, do you wish to have these

17   served at the expense of the Government; is that correct?

18        DEFENDANT PAWELSKI: Yes.

19        THE COURT:  So, Mr. Kimbrel's will be served.

20        Ms. Hartmann can you -- and Mr. Morris does not

21   need this because we already issued the writ.  Work with

22   the Clerk of the Court to see how that gets issued.

23        COURTROOM DEPUTY:  Yes, Your Honor.

24        THE COURT:  The record will show that Mr. Brokaw

25   has re-entered the courtroom.

1          Mr. Brokaw, I am going to tell you that if you

2     behave at trial the way you behaved here today you may

3     find yourself out there, because I will not have you

4     disrupting this.  And I will tell you, you will not do

5     yourself any good in the eyes of the jurors by behaving

6     that way, either.

7          So if you wish to find out what is happening, you

8     can ask your co-defendants what happened here.  But at

9     this point I want to let everybody know that I will not

10    have any disruption in this court.  So if we have people

11    in the gallery, as we did today, talking, if you cannot

12    not talk to each other or you are disruptive I will also

13    have you removed from the courtroom.

14          All right.  Court will be in recess.

15          **R E P O R T E R ' S   C E R T I F I C A T E**

16          I, Darlene M. Martinez, Official Certified

17    Shorthand Reporter for the United States District Court,

18    District of Colorado, do hereby certify that the foregoing

19    is a true and accurate transcript of the proceedings had

20    as taken stenographically by me at the time and place

21    aforementioned.

22          Dated this 27th day of October, 2014.

23          _____

24          s/Darlene M. Martinez

25          RMR, CRR

*DARLENE M. MARTINEZ, RMR, CRR*
*United States District Court*
*For the District of Colorado*