```
                                                                1

 1              IN THE UNITED STATES DISTRICT COURT
 2                  FOR THE DISTRICT OF COLORADO
 3    Case No. 13-cr-00392-CMA
 4    _____
 5    UNITED STATES OF AMERICA,
 6         Plaintiff,
 7    vs.
 8    GEORGE T. BROKAW, JOHN J. PAWELSKI, MIMI M. VIGIL, and CLARA
 9    M. MUELLER,
10         Defendants.
11    _____
12              Proceedings before MICHAEL E. HEGARTY, United
13    States Magistrate Judge, United States District Court for
14    the District of Colorado, commencing at 2:26 p.m., October
15    2, 2013, in the United States Courthouse, Denver, Colorado.
16    _____
17              WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS
18    ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...
19    _____
20                           APPEARANCES
21              MATTHEW KIRSCH and MARTHA PALUCH, Assistant United
22    States Attorneys, appearing for the government.
23
24    _____
25                        INITIAL APPEARANCE
```

2

```
 1                      P R O C E E D I N G S
 2              (Whereupon, the within electronically recorded
 3     proceedings are herein transcribed, pursuant to order of
 4     counsel.)
 5              THE COURT: Case No. 13-cr-392, United States of
 6     America versus George Thomas Brokaw, John J. Pawelski, Mimi
 7     M. Vigil, and Clara M. Mueller.
 8              For the United States, please.
 9              MR. KIRSCH: Good afternoon, Your Honor.  Matthew
10     Kirsch and Martha Paluch appearing for the United States.
11              THE COURT: Thank you.
12              Okay.  Mr. Brokaw, please identify yourself.
13              DEFENDANT BROKAW: Excuse me?
14              THE COURT: Thank you.  I wanted you to identify
15     yourself.
16              Mr. Pawelski?
17              DEFENDANT PAWELSKI: Yes, sir.
18              THE COURT: Am I getting that name correct?
19              DEFENDANT PAWELSKI: Pawelski.
20              THE COURT: Paw --
21              DEFENDANT PAWELSKI: Pawelski.
22              THE COURT: Pawelski.  Okay.  Thank you.
23              Ms. Vigil?
24              DEFENDANT VIGIL: (No audible response.)
25              THE COURT: And Ms. Mueller?
```

1              DEFENDANT MUELLER: (No audible response.)

2              THE COURT: Okay.  Thank you.

3              Do you have a motion first, Mr. Kirsch?

4              MR. KIRSCH: I do, Your Honor.  At this point,
5     since all of these defendants have now been arrested, the
6     government would move to unseal this case.

7              THE COURT: That'll be granted.

8              Okay.  I have before me an Indictment, 13-cr-392,
9     against the previously named individuals.  The Indictment's
10    brought under 18 United States Code, Section 286, that's
11    Count 1.  Counts 2 through 13, 18 United States Code,
12    Section 287.  Count 14, 18 United States Code, Section 371.
13    Counts 15 to 18, 26 United States Code, Section 7212(a).

14             As to Count 1, alleging that the four named
15    defendants engaged in a conspiracy to file false claims for
16    refund with the IRS.  Counts 2 through 7 against only Mr.
17    Brokaw, under 18 United States Code, Section 287, a false
18    claim for refund.  Counts 8 to 11 only against Mr. Pawelski
19    -- is that right?

20             DEFENDANT PAWELSKI: Correct.

21             THE COURT: Did I get that right?  False claim for
22    refund.  Count 12 against Ms. Vigil, false claim for a
23    refund.  Count 13 against Ms. Mueller, false claim for a
24    refund.  Count 14 against all four, conspiracy to corruptly
25    endeavor to obstruct or impede the due administration of the

1   Internal Revenue Laws.  Count 15 only against Mr. Brokaw,
2   corrupt endeavor to obstruct or impede the due
3   administration of the Internal Revenue Laws.  Count 16
4   against Mr. Pawelski, again, corruptly endeavor to obstruct
5   or impede the due administration of the Internal Revenue
6   Laws.  Count 17 only against Ms. Vigil, the same charge.
7   Count 18 against Ms. Mueller, the same charge.
8           Potential penalties for those offenses.  Count 1,
9   which is against all four, not more than ten years in
10  prison, not more than a $250,000 fine, or both, not more
11  than three years' supervised release, and a $100 special
12  assessment.  Counts 2 through 7, only against Mr. Brokaw,
13  not more than five years in prison, not more than a $250,000
14  fine, or both, not more than three years' supervised
15  release, and a $100 special assessment.  Count 8 through 11
16  against Mr. Pawelski, not more than five years in prison,
17  not more than a $250,000 fine, or both, not more than three
18  years' supervised release, and a $100 special assessment.
19  Count 12 against Ms. Vigil, not more than five years in
20  prison, not more than a $250,000 fine, or both, not more
21  than three years' supervised release, and a $100 special
22  assessment.  Count 13 against Ms. Muller, again, not more
23  than five years in prison, not more than a $250,000 fine, or
24  both, not more than three years' supervised release, and a
25  $100 special assessment.  Count 4 against everyone -- or 14,

5

1  excuse me, the same penalty, not more than five years in
2  prison, not more than a $250,000 fine, or both, not more
3  than three years' supervised release, and a $100 special
4  assessment.
5        And Count 15, again, I think is brought against
6  each of you individually, so I'll only read that penalty
7  once.  That's 15, 16, 17 and 18, not more than three years
8  in prison, not more than a $5,000 fine, or both, not more
9  than one year supervised release, and a $100 special
10 assessment.
11       You all have the right --
12       MR. KIRSCH: Your Honor, I --
13       THE COURT: Yes?
14       MR. KIRSCH: -- I apologize for interrupting, but
15 I think that there's actually a typographical error in the
16 penalty sheets.
17       THE COURT: Okay.
18       MR. KIRSCH: I apologize for that.  The fine for
19 the last count in which each defendant is named is also a
20 maximum $250,000, not $5,000.
21       THE COURT: All right.  Very good.
22       MR. KIRSCH: I apologize.
23       THE COURT: With that added, then, any other
24 changes, Mr. Kirsch?
25       MR. KIRSCH: No, sir.  Thank you.

6

```
 1            THE COURT:  Each of you have the right to remain
 2   silent.  Anything you say in court or to the United States
 3   could be used against you in the prosecution of this case.
 4   You each have the right to a trial by jury.  At that trial
 5   you're presumed innocent until proven guilty, and the
 6   government's required to prove you're guilty beyond a
 7   reasonable doubt.  You can challenge the government's
 8   evidence, put on evidence that you're innocent.  If you're
 9   found guilty, appeal that conviction, and each of you is
10   entitled to counsel.  If you cannot afford an attorney, I
11   will appoint one for you.  Each of you have requested
12   appointment of counsel, and I find that you qualify for
13   counsel.
14            Mr. Brokaw, you're the first name on the list, so
15   you will get a federal public defender.  Mr. Pawelski, Ms.
16   Vigil, and Ms. Muller will be appointed members of our CJA
17   panel to represent you.
18            Mr. Kirsch?
19            MR. KIRSCH:  Your Honor, I apologize again.  I
20   believe that the public defender's office has previously
21   represented a person who at least is a potential witness in
22   this matter, and so I suspect that they may have a conflict
23   with respect to Mr. Brokaw.
24            THE COURT:  Okay.  And --
25            MR. KIRSCH:  That -- that person's name is Ronald
```

1    Hoodenpyle.  He was previously represented by Ed Harris in
2    the public defender's office.
3         THE COURT: All right.  And you believe that would
4    create a conflict?
5         MR. KIRSCH: I do, Your Honor.  I'm aware of at
6    least one instance during which Mr. Brokaw and Mr.
7    Hoodenpyle were together speaking to a law enforcement
8    officer.
9         THE COURT: Okay.  Well, in an abundance of
10   caution, then, I'll appoint the CJA panel to represent all
11   four defendants.
12        All right.  Turning to the issue, Mr. Kirsch, of
13   the government's position on detention.
14        MR. KIRSCH: Your Honor, we have concerns that all
15   four of these defendants could pose a risk of flight.  With
16   respect to Mr. Brokaw and Mr. Pawelski, we're asking for the
17   three-day period, partly to allow the probation office time
18   to investigate whether or not home detention with GPS
19   monitoring would be a viable option for bond for Mr. Brokaw
20   and Pawelski.
21        With respect to Ms. Vigil and Ms. Mueller, it's
22   the government's position that there are a combination of
23   conditions that could ensure that they would appear.  Those
24   conditions, in our view, would include a $25,000 unsecured
25   bond, a travel restriction to Colorado accompanied by a

1    requirement that they either surrender existing passports or
2    obtain no new passports, a requirement that they not possess
3    any firearms, and, for those two, a special condition that
4    they not act as a notary public.
5              THE COURT: Okay.  Let me explain to you what we're
6    talking about.  With any case in federal court, any criminal
7    case, there's a statute that says the Executive Branch,
8    speaking here through the U.S. Attorney's Office, has a
9    right to ask for three days' detention, that's three days,
10   business days, not calendar days.  That federal statute
11   prohibits me from releasing you if the United States seeks
12   detention.  Mr. Kirsch has just stated that with regard to
13   Mr. Pawelski and Mr. Brokaw, the United States is, at the
14   moment, seeking that detention, which then would prohibit me
15   from releasing you until Wednesday.  No, Monday.  Monday.
16   But Mr. Kirsch said it's for the purpose of investigating
17   suitable monitoring from your home, which it takes several
18   days for the U.S. Probation Office to go out to a home
19   anyway and make sure it can be hardwired for electronic
20   monitoring.
21             With regard to Ms. Vigil and Mr. Mueller (sic),
22   the United States is not asking for detention but is
23   agreeing to release under certain conditions.  Let me go
24   over those first.  Ms. Vigil, this will be an unsecured bond
25   of $25,000, meaning that the United States is not -- the

1    Court is not requiring you to post anything, okay, but if
2    you violate the conditions of your release they could seek
3    somehow to forfeit $25 -- $25,000 from you.  You do have a
4    couple of particular conditions that you need to comply
5    with.  Number one, you can't have any violation of federal,
6    state or local law, or else that would violate the
7    conditions of your release and you'd be brought back into
8    detention.  You must cooperate in the collection of a DNA
9    sample if that hasn't already -- already happened.  You must
10   advise the Court and the Pretrial Services office in advance
11   before changing residence or telephone number, and you would
12   have to appear at all future court appearances.
13            The special conditions would be you will be
14   supervised by the U.S. Probation Office out of Colorado
15   Springs, and they will tell you when you would need to
16   appear before them in order to have a discussion with them.
17   Do you have a job right now?
18            DEFENDANT VIGIL:  No.
19            THE COURT:  No.  Are you disabled?
20            DEFENDANT VIGIL:  No, I'm self-employed.
21            THE COURT:  Oh, you're self-employed, okay.  Well,
22   you need to maintain that employment, and if somehow that
23   goes away, you would need to be seeking employment.  Do you
24   have a passport?
25            DEFENDANT VIGIL:  Yes.

1              THE COURT: Okay.  That needs to be surrendered
2     within 48 hours to the clerk's office here in this court.
3     We don't have a clerk's office down in Colorado Springs,
4     although I think they could surrender it to the probation
5     office down there, couldn't they?
6              MS. MEADOR: (Inaudible).
7              THE COURT: You could surrender it to the probation
8     office down there within 48 hours, that would be by Friday
9     afternoon, and thereafter may not attempt to obtain a
10    passport or any other international travel document.  You
11    must stay within the state of Colorado without permission
12    from the Court.
13             This includes a condition that you may not have
14    direct or indirect contact with your co-defendants.  Are any
15    of them related to you?
16             DEFENDANT VIGIL: No.
17             THE COURT: Okay.  And you don't live with any of
18    them?
19             DEFENDANT VIGIL: No.
20             THE COURT: All right.  So you may not have contact
21    with them.  You may not possess a firearm, any destructive
22    device or any weapon.  You may not use excessive alcohol.
23    And these are conditions that we place on everybody, they're
24    not peculiar to you.  You may not use or unlawfully possess
25    any narcotic drug, and that includes marijuana.  If you have

1     any contact with a law enforcement officer of any kind, you
2     need to report that contact to the probation office within
3     -- well, immediately.  You may not act as an informant
4     without permission from the Court, and I'm going to ask you
5     a question:  Can you agree to abide by a restriction that
6     you not engage in any notary duties?
7                DEFENDANT VIGIL: I'm not a notary.
8                THE COURT: You're not a notary.
9                DEFENDANT VIGIL: No.
10               THE COURT: All right.  So it would be unlawful for
11    you to notarize stuff anyway, right?
12               DEFENDANT VIGIL: Yes.
13               THE COURT: All right.  So there's -- I'm not going
14    to include a condition that's a legal impossibility.
15               Do you understand all those?
16               DEFENDANT VIGIL: Yes.
17               THE COURT: Okay.  Then the order is that you be
18    released, but you need to stop by the marshals -- well, I
19    guess you're already in their system -- if there's any more
20    processing that the marshals need to do, but other than
21    that, the order is that you be released.
22               Those are the same conditions for you, Ms.
23    Mueller.  Were you just listening to what I had to say?
24               DEFENDANT MUELLER: Yes.
25               THE COURT: Did you have any questions?

1            DEFENDANT MUELLER: I don't have any questions on
2    that, but I did not request a court appointed attorney.
3            THE COURT: Okay.
4            DEFENDANT VIGIL: Everything else is very clear.
5            THE COURT: Well, you did technically because you
6    filled out this financial affidavit. You're not required to
7    fill out that affidavit --
8            DEFENDANT MUELLER: Oh, I didn't know that was what
9    it was for.
10            THE COURT: Yeah.  Yeah, the top of it says
11    "Financial Affidavit in Support of a Request for an
12    Attorney."  We need to do a better job of explaining that to
13    you, but do you want me to just throw that away?
14            DEFENDANT MUELLER: Please do.
15            THE COURT: All right.  And do -- are you going to
16    have an attorney?
17            DEFENDANT MUELLER: I will be able to get an
18    attorney.
19            THE COURT: Very good.
20            DEFENDANT MUELLER: Thank you.
21            THE COURT: So, therefore, I'll rescind my order
22    with regard to Ms. Mueller about appointment of a CJA
23    lawyer, okay?  But otherwise, did you understand everything
24    about the conditions?
25            DEFENDANT MUELLER: Yes, I did, and I am a notary.

13

1        THE COURT: Okay.  Can you agree not to act as a
2    notary?
3        DEFENDANT MUELLER: I agree to put that away.
4        THE COURT: Okay.  Now, we probably will have
5    another hearing by Monday.  Are you sure you can get your
6    lawyer by Monday?
7        DEFENDANT MUELLER: I won't know until I get on the
8    phone.
9        THE COURT: Okay.
10       DEFENDANT MUELLER: I hope so.
11       THE COURT: All right.  Well, I'll tell you what.
12   If you -- you know, you can always get an attorney from the
13   court, and, you know, they have nothing to do with the
14   court, they -- they're private lawyers whose job it is to
15   represent you, we just happen to pay them, but you can have
16   one of them in the meantime until you do get a lawyer, but
17   if you don't get -- if you can't find one, you do qualify,
18   so you should come back in and ask if that's necessary.
19       DEFENDANT MUELLER: Well, leave that in place, and
20   then if I get an attorney --
21       THE COURT: I think I should.
22       DEFENDANT MUELLER: Okay.  Thank you.
23       THE COURT: So I'm going to change myself again and
24   ask that she be appointed CJA.  If a CJA lawyer shows up and
25   they're not needed, they know what to do, okay?

1         DEFENDANT MUELLER: (Inaudible.)
2         THE COURT: And with regard to, then, Mr. Brokaw
3    and Mr. Pawelski, federal law requires that you be detained
4    until Monday, at which time I'm assuming we'll enter similar
5    orders of release, but they may include some kind of
6    monitoring. Okay? So --
7         DEFENDANT PAWELSKI: Judge, I object. I -- I have
8    a question for you.
9         THE COURT: You can ask a question, although I need
10   to remind you that even questions can contain information,
11   and you do have a right to remain silent and by asking a
12   question you're waiving that right.
13        DEFENDANT PAWELSKI: We're -- we're -- you're
14   talking three days. Today -- today is one. Today is
15   Wednesday, Thursday, Friday?
16        THE COURT: It's business days. So Thursday is one
17   day, Friday is another day, and Monday is the next business
18   day.
19        DEFENDANT PAWELSKI: Judge, I'm here today.
20        THE COURT: I know, but the federal law is black
21   and white, and I didn't write it, but I am required to
22   comply with it, so...
23        DEFENDANT PAWELSKI: I believe -- I believe Mr.
24   Kirsch is adding additional punishment to Mr. Brokaw and
25   myself because we filed a complaint with the Postmaster

15

1   General against him, and that's on the public record.  It
2   was sent to the DOJ, his boss, and nothing has been done, so
3   I believe that's why he wants us to stay in custody for a
4   couple extra days.
5           THE COURT: Okay.  Well, that's -- that's been made
6   of record, all right?
7           All right.  Anything further on this case, Mr.
8   Kirsch?
9           MR. KIRSCH: What time is the hearing on Monday,
10  Your Honor?
11          THE CLERK: Ten o'clock.
12          MR. KIRSCH: Okay.
13          THE COURT: That's next door, Judge Watanabe.
14          MR. KIRSCH: Yes, sir.
15          THE COURT: Okay.  So, Mr. Brokaw and Mr. Pawelski
16  are remanded to the custody of the United States Marshal.
17  Ms. Vigil and Ms. Mueller ordered released after any
18  processing, okay?
19          (Whereupon, the within hearing was then in
20  conclusion at 2:43 p.m. on October 2, 2013.)
21          I certify that the foregoing is a correct
22  transcript, to the best of my knowledge and belief, from the
23  record of proceedings in the above-entitled matter.
24      /s/ Bonnie Nikolas                August 7, 2015
25      Signature of Transcriber                  Date

AVERY/WOODS REPORTING SERVICE, INC.
455 SHERMAN STREET, SUITE 460, DENVER, CO  80203
303-825-6119